IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 25-cr-468 |
| | : | No. 25-mj-2035 |
| BRYANT JARVIS | : | |

McHUGH, J.                                                                                            December 15, 2025

**MEMORANDUM**

  This is an appeal from an order of detention issued on October 14, 2025.  The legal standard is established by 18 U.S.C. § 3142(e).  The controlling question is whether any "combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  As discussed below, the Government stands on firm ground as to both prongs of the statute.  There would be no issue except that the Defendant, Bryant Jarvis suffers from a serious medical condition—medical myeloma.  Having directed counsel to seek further information from Mr. Jarvis' treating oncologist, and having granted them leave to file supplemental briefing, the appeal is ripe for resolution.  For the reasons discussed below, the Order of Detention will remain in place.

  Mr. Jarvis stands accused of a murder-for-hire scheme.  The evidence is strong, including text messages and conversations captured on both video and audio.  The intended victim's address and photographs were sent to the purported "hit man."  Defendant was given the opportunity to back away from the plot but did not, tendering cash in partial payment and suggesting how the assassin might proceed.  He was carrying a loaded handgun at the time of his arrest.  This certainly suffices to establish a threat to public safety.

Defendant also possessed five cell phones and $240,000 in cash. Subsequent investigation has revealed his involvement in multiple sophisticated fraud schemes for which future indictments are likely. Those schemes involved the impersonation of others. Beyond that, Mr. Jarvis has engaged in substantial international travel, some of which involved the use of private planes. When coupled with the potential sentence Defendant faces, that combination of financial resources, skill in duplicity, and access to foreign countries more than suffices to establish a risk of flight and concern over securing his appearance.

The question then becomes whether his medical condition, admittedly serious, provides a basis on which to release him. The defense argument is two-fold: (1) that the need for treatment is reason enough to conclude that Mr. Jarvis will not flee, and (2) that he cannot be safely or adequately treated while in custody.

The first argument would have some resonance if Mr. Jarvis showed prudent concern for his health after his diagnosis and before his arrest. But that is far from being the case. After his diagnosis in late 2024, and despite taking medication resulting in immuno-suppression, the Mr. Jarvis travelled extensively and enjoyed a robust social life, as documented in his social media accounts. In 2025, he traveled internationally to El Salvador, Guatemala, Jamaica (showing himself partying inside a crowded club), Colombia (on more than one occasion), Hong Kong (where he went to Disneyland), Ibiza (where again he photographed himself partying), Paris (where he went to Euro-Disney), Curaçao, Mexico (with more documented partying), and Africa. Domestically, he attended the Superbowl in February of 2025, traveled to Aspen, Colorado in February of 2025, traveled to a crowded fight in March of 2025, and attended the "March Madness" championship game in April of 2025. He was also in New Orleans in July of 2025, partying inside a crowded club, flew to Atlanta to attend an Eagles game, and made it to Las Vegas

in September of 2025.  *See* ECF 14 at 5-6.  Given that cavalier attitude toward his health, it can hardly be said that fear of cancer would keep him rooted.

The second argument merits more serious consideration but does not warrant release. Notably, although Mr. Jarvis's oncologist believes that it is preferable for him to have a bone marrow transplant sooner rather than later, she has not opined that it is urgent.  Counsel for the Federal Detention Center has represented that medical personnel are making daily rounds with his chemotherapy medication and that it is prepared to transfer him to a Bureau of Prisons Medical Center if required.  To be sure, a federal correctional facility is not the ideal place to treat cancer, but the Bureau of Prisons has the capacity to provide needed care.  And the risks to Mr. Jarvis by virtue of his proximity to others because of incarceration are no greater than the risks he willingly accepted in the way that he lived his life before his arrest.  Defendant's medical needs do not outweigh the showing the Government has made as to danger to others and a risk of flight, and the Order of Detention therefore stands.

     /s/ Gerald Austin McHugh
United States District Judge